## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6172 | DATE | 7/22/2003 |
| CASE TITLE | GEORGE WEILAND, et al. vs. LINEAR CONSTRUCTION, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion to alter or amend judgment [50-1] is denied. Pursuant to Rule 60(a), the Court's Opinion and Order of March 21, 2003 is amended as set for in greater detail in this Memorandum Opinion and Order. Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 23 2003 | |
| | Notified counsel by telephone. | | date docketed | 58 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom JHC deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE WEILAND, as Trustee;           )
STRUCTURAL IRON WORKERS               )
LOCAL NO. 1 PENSION TRUST             )
FUND; and LOCAL UNION NO. 1           )
IRON WORKERS ANNUITY FUND,            )
                                      )   Case No. 00 C 6172
          Plaintiffs,                 )
                                      )   Hon. John W. Darrah
     v.                               )
                                      )
LINEAR CONSTRUCTION LTD. and          )
JJM CONSTRUCTION, INC.,               )
                                      )
          Defendants.                 )

DOCKETED
JUL 2 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the Structural Iron Workers Local Union No. 1 Pension Trust Fund and the Structural Iron Workers Local Union No. 1 Annuity Fund (collectively "the Funds"), which are employee benefit plans within the meaning of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), (2); and George Weiland, a Trustee of the Funds (collectively "Plaintiffs"), filed a single-count amended complaint against Defendants, Linear Construction Ltd. ("Linear") and JJM Construction, Inc. ("JJM") (collectively "Defendants"), to collect unpaid contributions, interest, liquidated damages, and audit fees owing to the Funds from December 3, 1999 to the present pursuant to an agreement executed between the parties.

After a trial without a jury on the issues, judgment was entered in favor of the Plaintiffs and against the Defendants. In a written opinion and order setting forth the Court's Findings of Fact and Conclusions of Law, the Court held that Linear and JJM, as Linear's alter ego, breached the Principal

Agreement with Local 1 and were jointly and severally liable to Plaintiffs, pursuant to the CBA/Principal Agreement, the Trust Agreements and the applicable federal statutes, for the following amounts: $106,929.38 in delinquent contributions on behalf of Linear, $441,788.22 in delinquent contributions on behalf of JJM, $9,745.00 in audit fees, and reasonable attorney's fees and costs to be determined pursuant to 29 U.S.C. § 1132(g)(2)(D).

The Court also held that, pursuant to § 1132(g)(2)(C), Linear and JJM were also jointly and severally liable to Plaintiffs for an additional amount equal to the greater of the liquidated damages provided for under the Principal Agreement or interest on the unpaid contributions.

Plaintiffs filed a Motion to Alter or Amend Judgment. Defendants filed a response thereto. Subsequently, the Court notified the parties that, pursuant to Federal Rule of Evidence 201, it would take judicial notice of the prime rate for the purpose of determining the interest owed on the unpaid contributions. The Court then ordered the parties to submit calculations of the interest on the unpaid contributions using the prime rates during the relevant periods. Only Plaintiffs filed calculations of the interest owed on the unpaid contributions.

*Motion to Alter or Amend Judgment*

Plaintiffs move, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend the judgment due to (1) the legally erroneous subtraction of total wages for the five out-of-jurisdiction jobs from the total contributions as calculated in Plaintiffs' Trial Exhibits 33 and 34, (2) the Court's reliance on Defendants' post-trial exhibits to establish the actual hours worked in those five jobs, and (3) Defendants' failure to establish that the hours worked on those five jobs were actually included in the final audits for Defendants.

The Court's March 21, 2003 Opinion and Order, setting forth the Court's Findings of Fact

and Conclusions of Law, is not a "judgment" pursuant to Federal Rules of Civil Procedure 58(a)(1) or 59(e). Thus, Plaintiffs' Motion to Alter or Amend Judgment is denied.

*Rule 60 Amendment of March 21, 2003 Opinion and Order*

Rule 60 provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Fed.R.Civ.P. 60(a).

Plaintiffs' Rule 59(e) motion and a supplemental brief submitted mistakes in the Court's March 21, 2003 Opinion and Order. Specifically, the Court made a clerical error in the computation of damages by excluding from the total unpaid contributions calculation the total gross wages paid for jobs outside the geographic jurisdiction of the Principal Agreement rather than the contributions that were purportedly owed for those jobs. The Court did not award interest on the unpaid contributions at that time. Therefore, the Opinion and Order of March 21, 2003 is amended to include the following additional Findings of Fact.

To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be considered Findings of Fact, they shall also be deemed Findings of Fact.

> The unpaid contributions owed to the Funds were calculated according to the following formula: Fringe Benefits + Iron Workers Political Action League ("IPAL) + Working Dues Assessment ("WDA"). The Fringe Benefits owed consists of covered hours multiplied by the benefits rate. The benefits rate for the period beginning December 1, 1999 and ending May 31, 2000 was $14.36 per hour. The benefits rate for the period beginning June 1, 2000 and ending May 31, 2001 was $14.34 per hour. The benefits rate for the period beginning June 1, 2001 and ending April 30, 2002 was $15.29 per hour. The IPAL owed consists of the hours multiplied by $0.03. The WDA owed consists of the gross wages earned multiplied by 2.5%.

The New Halls Ferry job, which was performed outside the geographic jurisdiction of the Principal Agreement, involved 956.49 hours. The New Halls Ferry job was performed during the December 1, 1999 to May 31, 2000 period. The contributions for this job would have been $14,429.82 (956.49 hours x $14.36/hour + 956.49 hours x $0.03 + $26,637.29 x 2.5%).

The Wilson SS-20 job, which was performed outside the geographic jurisdiction of the Principal Agreement, involved 1,808.48 hours. The Wilson SS-20 job was performed during the December 1, 1999 to May 31, 2000 and June 1, 2000 to May 31, 2001 periods. The contributions for this job would have been $26,679.24 (140.4 hours x $14.36/hour + 1,668.48 hours x $14.34/hour + 1,808.48 hours x $0.03 + $27,313.50 x 2.5%).

The Stockton job, which was performed outside the geographic jurisdiction of the Principal Agreement, involved 128.56 hours. The Stockton job was performed during the June 1, 2000 to May 31, 2001 period. The contributions for this job would have been $1,943.84 (128.56 hours x $14.34/hour + 128.56 hours x $0.03 + $3,857 x 2.5%).

The Wilson job, which was performed outside the geographic jurisdiction of the Principal Agreement, involved 48.8 hours. The Wilson job was performed during the June 1, 2000 to May 31, 2001 period. The contributions for the job would have been $737.85 (48.8 hours x $14.34/hour + 48.8 hours x $0.03 + $1,464.00 x 2.5%).

The Lenexa job, which was performed outside the geographic jurisdiction of the Principal Agreement, involved 3,710.9 hours. The Lenexa job was performed during the June 1, 2000 to May 31, 2001 and June 1, 2001 to April 30, 2002 periods. The contributions for the job would have been $59,567.68 (70 hours x $14.34/hour + 3,640.9 hours x $15.29 + 3,710.9 hours x $0.03 + $111,327.50 x 2.5%).

At trial, the auditor for the Funds, James Stelzer, testified that interest on unpaid contributions was determined by the prime rate.

It was the Funds' policy to calculate the interest owed on unpaid contributions based on the average "prime rate" for the period the contributions were unpaid, compounded monthly. The "prime rate" is the prime commercial loan rate set by banks. The monthly prime rate is normally determined by reference to the prime commercial loan rate reported in the *Wall Street Journal* on the first day of each month, which refers to the prime rate at the close of business on the last day of the preceding month.

For the forty-one months between December 1999 and April 30, 2003, during which Linear owed contributions, the average prime rate for the entire forty-one months was

6.69%. For the thirty-three months between August 2000 and April 30, 2003, during which JJM owed contributions, the average monthly prime rate for the entire thirty-three month period was 6.11%.

The interest on Linear's unpaid contributions, compounded monthly based on the average prime rate for the period beginning December 1999 and ending April 30, 2003, is $24,901.27.

The interest on JJM's unpaid contributions, compounded monthly based on the average prime rate for the period beginning August 2000 and ending April 30, 2003, is $67,120.37.

Liquidated damages for the period governed by the 1997 Principal Agreement, December 1999 through May 31, 2000, were 15% of the delinquent amount recoverable. Liquidated damages for the period governed by the 2000 Principal Agreement, June 1, 2000 through May 31, 2001, were 20% of the delinquent amount recoverable.

The liquidated damages for unpaid contributions owed by Linear would be $20,234.66 ($71,726.05 x 0.15 + $47,378.73 x 0.20). The liquidated damages for unpaid contributions owed by JJM would be $98,413.40 ($276,196.49 x 0.15 + $284,919.67 x 0.20).

The Opinion and Order of March 21, 2003, is also amended to include Conclusions of Law as follows.

Federal Rule of Evidence 201 provides that a court may take judicial notice of a fact that is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Rule 201 also provides that a court may take judicial notice of a fact *sua sponte* at any stage of the proceeding. Fed.R.Evid. 201(c), (f).

The prime rates at the time interest on the unpaid contributions accrued can be determined by resort to the *Wall Street Journal*'s published prime rates at the relevant times. The Court finds the *Wall Street Journal* to be a source of sufficient accuracy for purposes of Rule 201. Therefore, the Court will take judicial notice of the prime rates at the time the interest on the unpaid contributions accrued at the relevant times.

Linear and JJM, as Linear's alter ego, breached the Principal Agreement with Local 1 and are jointly and severally liable to Plaintiffs, pursuant to the CBA/Principal

Agreement, the Trust Agreements and the applicable federal statutes, for the following amounts: $119,104.84 in delinquent contributions on behalf of Linear, $526,187.35 in delinquent contributions on behalf of JJM, $9,745.00 in audit fees, $92,021.64 in interest on the delinquent contributions, $118,648.06 in liquidated damages, and reasonable attorney's fees and costs to be determined pursuant to 29 U.S.C. § 1132(g)(2)(D).[1]

## CONCLUSION

Pursuant to Rule 60(a), the Court's Opinion and Order of March 21, 2003 is amended as set forth in greater detail in this Memorandum Opinion and Order.

John W. Darrah, Judge
United States District Court

Date: July 22, 2003

---

[1] This Conclusion of Law shall replace the first full paragraph on page 20 of the Court's March 21, 2003 Opinion and Order.